IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DR. TERRY WOMACK,

             Plaintiff,

      v.

DAVIS McTEAGUE; DOMINGA GUERRERO;
MICHAEL VISSERS; JOYCE McCLURE;
STEVEN KOC; ESTELLE PARKER-KENT;
MICHAEL SUMMERS; and LORI LINDLEY,

             Defendants.

2:10-cv-332-SU

FINDINGS AND
RECOMMENDATION

SULLIVAN, Magistrate Judge:

### FINDINGS AND RECOMMENDATION

Dr. Terry Womack ("Womack") brought this action pursuant to 42 U.S.C. § 1983, against eight individually named defendants.[1]  Until August 10, 2006, Womack was a licenced chiropractor doing business in Pendleton, Oregon.  In his Complaint, Womack alleges defendants violated his rights under the United States Constitution.  In his First Claim for Relief, Womack alleges defendants violated the Fourteenth Amendment by unlawfully depriving him of a property interest in his chiropractic license.  In Womack's Second Claim for Relief, he alleges defendants violated his substantive due process rights under the Fourteenth Amendment by depriving him of his good

---

[1]Defendant Davis McTeague is the Executive Director of the Oregon Board of Chiropractic Examiners.  Defendants Dominga Guerrero, Michael Vissers, Joyce McClure, Steven Koc, and Estelle Parker-Kent, were members of the Oregon Board of Chiropractic Examiners between 2005 and 2008.  Defendant Michael Summers was an investigator with the Oregon Board of Chiropractic Examiners.  Defendant Lori Lindley is an Assistant Attorney General with the State of Oregon and, at all relevant times, was assigned to the Board as general counsel.

reputation in his community.  In his Third Claim for Relief, Womack alleges his Fourth and Fourteenth Amendment rights were violated as a result of an alleged malicious criminal prosecution against him.

In response, defendants assert a number of affirmative defenses including failure to state a claim, absolute and qualified immunity, and  statute of limitations.  Defendants now move for summary judgement pursuant to FED. R. CIV. P. 56.  For the reasons set forth below, defendants' Motion for Summary Judgment should be granted.

## *BACKGROUND*

The Oregon Board of Chiropractic Examiners ("Board") is comprised of seven individuals: five are licenced chiropractors and two are lay persons.  (Kelly Beringer Decl. ¶ 2, Aug. 15, 2011.) Each member is appointed by the governor to serve for a term of three years.  OR. REV. STAT. § 684.130.  The Board has an Assistant Attorney General assigned as its general counsel.  (Lori Lindley Decl. ¶ 2, Aug. 12, 2011.)  The Board also employs an investigator who determines the veracity of filed complaints.  (Dave McTeague Decl. ¶ 3, Aug. 12, 2011.)

In 2003, the Board received a complaint from one of Womack's former patients ("Patient 1"), alleging Womack engaged in sexual misconduct with her during a chiropractic treatment session. (McTeague Decl. ¶ 2.)  The complaint against Womack was investigated by defendant Michael Summers.  (McTeague Decl. ¶ 3.)  Summers interviewed both Patient 1 and Womack. (Michelle Burrows Decl. Ex. 1, Oct. 17, 2011.)  Summers also interviewed other community members regarding the parties' reputations for truthfulness, and reviewed Womack's personal and professional history.  (Burrows Decl. Ex. 1.)

Summers learned Patient 1 had previously filed a report about the incident with the Pendleton Police Department.  (Terry Womack Decl. Ex. 2 at 1, Oct. 17, 2011.)  The police department had administered a polygraph test to Womack, which indicated his denials were truthful. (Womack Decl. Ex. 2 at 6.)  The police department then closed the case and the district attorney did not bring charges.  (Womack Decl. Ex. 2 at 8.)  Summers also discovered that in the early 1990s

Womack had been accused of and disciplined by the Board for sexually violating several of his patients. (Justin Kidd Decl. Ex. 1 (Michael Summers Deposition 34:18-35:6, May 16, 2011 (hereinafter "Summers Dep. I ")); Ex. 7 at 6, Aug. 15, 2011.) The Administrative Law Judge ("ALJ") assigned to Womack's 1992 Board hearing issued a proposed order finding the allegations against Womack were true; Womack was a non-credible witness; and recommending Womack's license be revoked. (Kidd Decl. Ex. 7 at 6.) The Board, however, elected merely to suspend Womack's license for 90 days. (Kidd Decl. Ex. 7 at 14.)

During the course of the investigation, Summers was able to identify other former patients who alleged they also were subjected to inappropriate sexual contact by Womack. (Burrows Decl. Ex. 4 and 5.) In one instance, Summers overheard a woman in a Pendleton area restaurant refer to Womack as "Dr. Happy Fingers." (Burrows Decl. Ex. 8 (Michael Summers Dep. 135:5-25, June 20, 2011(hereinafter "Summers Dep. II")).) Summers inquired about the woman's experience with Womack and persuaded her to file a complaint. (Summers Dep. II 136:19-25.) While it does not appear Summers interviewed Womack about these additional allegations, the two may have discussed them briefly. (Summers Dep. II 106:22-107:15.)

Defendant Lori Lindley assisted with the investigation. (Summers Dep. II 67:1-10.) Lindley serves as general counsel to the Board and as the prosecutor in contested case hearings. (Burrows Decl. Ex. 7 (Lori Lindley Dep. 23:20-24:2, April 27, 2011 (hereinafter "Lindley Dep.")).) Lindley accompanied Summers on at least one investigatory interview. (Summers Dep. II 67:1-2.) Lindley also requested a second opinion on Womack's polygraph test. (Womack Decl. Ex. 3.) The examiner basically agreed with the results of the original test. (Womack Decl. Ex. 3.) He did, however, note that under his own more conservative method of scoring, the test results did not confirm that Womack was telling the truth. (Womack Decl. Ex. 3.)

On December 27, 2005, the Board issued a Notice of Proposed Disciplinary Action ("Notice") to Womack. (Kidd Decl. Ex. 8.) The Notice cited complaints by six different female patients as a basis for possible discipline. (Kidd Decl. Ex. 8 at ¶¶ 1-7.) The Notice also stated

Womack had previously been disciplined for subjecting his patients to unwanted sexual contact. (Kidd Decl. Ex. 8 at ¶ 8.) The Board issued a press release on the matter. (Kidd Decl. Ex. 2 (Dave McTeague Dep. 66:2-4, April 27, 2011 (hereinafter "McTeague Dep.")).)

On January 17, 2006, the East Oregonian newspaper ran an article ("January 17th EO article") about the Board's investigation of Womack. (Kidd Decl. Ex. 9.) The January 17th EO article reported the contents of the Board's December 27th Notice. (Kidd Decl. Ex. 9.) It also contained several quotes from McTeague discussing how the Board handles complaints from patients and explaining that the "[B]oard likes to move [cases involving patient-doctor boundary issues] along at a quicker pace." (Kidd Decl. Ex. 9.)

After the January 17th EO article appeared, three more patients filed complaints about Womack with the Board. (Kidd Decl. Ex. 10 at ¶¶ 8-11.) These complaints were added to an amended version of the Board's December 27th Notice ("Amended Notice"). (Kidd Decl. Ex. 10 at ¶¶ 8-11.) The Amended Notice was served on Womack on February 15, 2006. (Kidd Decl. Ex. 6 at 1.) On February 28, 2006, the East Oregonian reported ("February 28th EO article") the Board had received additional complaints. (Kidd Decl. Ex. 11 at 1.) The February 28th EO article quotes Summers as follows, "[t]he board is satisfied that enough serious violations have taken place and they're intent on revocation." (Kidd Decl. Ex. 11 at 2.) Subsequently, two more women came forward with complaints about Womack resulting in a Second Amended Notice of Proposed Disciplinary Action ("Second Amended Notice) being issued on April 17, 2006. (Kidd Decl. Ex. 12.)

In accordance with the pre-2005 statute governing contested hearings, the Board disclosed to Womack documents it planned to rely upon during the hearing. (Lindley Dep. 26:12-16.) For matters voted on after 2005, the Board is required to disclose "all information obtained by the Board in the investigation of the allegations in the notice." OR. REV. STAT. § 676.175(3). Documents that were not disclosed to Womack included assessments of witness credibility and the expert's report on Womack's polygraph test. (Burrows Decl. Ex. 7 at 17, 21.)

On May 15, 2006, Womack filed an Answer to the Second Amended Notice.  (Kidd Decl. Ex. 13.)  Womack demanded a formal contested case hearing in accordance with the Oregon Administrative Procedures Act.  (Kidd Decl. Ex. 13 at ¶ 1.)  Womack's answer denied all eleven allegations made against him, and raised several affirmative defenses including the doctrine of latches, claim preclusion, due process right to notice and a meaningful hearing, and the right to a jury trial.  (Kidd Decl. Ex. 13 at ¶¶ 2, 6-27.)

Several weeks before the hearing, Womack requested the right to depose Patient 1.  (Burrows Decl. Ex. 3.)  Womack argued it would be an abuse of agency discretion for the Board to summarily decide not to allow depositions regarding the "boundary issue."  (Burrows Decl. Ex. 3 at 2.)  The Board denied Womack's request citing an administrative rule that requires the party requesting a deposition in a contested case hearing to explain why no other means of obtaining the witness's testimony are adequate.  (Burrows Decl. Ex. 4 at 1.)  The Board found Womack had not met this burden.  (Burrows Decl. Ex. 4 at 1.)  Additionally, the Board noted Womack would have ample opportunity to cross examine the witness during the hearing.  (Burrows Decl. Ex. 4 at 1.)  The ALJ assigned to the case also denied the request.  (Burrows Decl. Ex. 5 at 2.)  The ALJ found the Board had used its discretion appropriately because it relied on a standardized procedure when deciding not to allow the deposition.  (Burrows Decl. Ex. 5 at 2.)

On June 12-16, 2006, a hearing was held in Pendleton, Oregon.  (Kidd Decl. Ex. 6 at 1.)  Womack was present and represented by his attorney.  (Kidd Decl. Ex. 6 at 1.)  The Board was present through its executive director McTeague, and Summers.  (Kidd Decl. Ex. 6 at 1.)  The Board was represented by Lindley.  (Kidd Decl. Ex. 6 at 1.)  The ALJ excluded polygraph evidence offered by Womack, and dismissed Womack's affirmative defenses.  (Kidd Decl. Ex. 6 at 2, 13-14.)

Womack called six witnesses during the hearing.  (Kidd Decl. Ex. 6 at 15-23.)  These witnesses included Womack's office assistant, a number of former female patients, and a practicing chiropractor.  (Kidd Decl. Ex. 6 at 15-23.)  The Board called 16 witnesses.  (Kidd Decl. Ex. 6 at 15-23.)  These witnesses included all eleven patients who had filed complaints against Womack.  (Kidd

Decl. Ex. 6 at 15-23.)   Additional testimony came from the husband of Patient 1, McTeague, Summers, and two practicing chiropractors. (Kidd Decl. Ex. 6 at 15-23.)  Womack's attorney had the opportunity to cross examine all of the Board's witnesses. (Kidd Decl. Ex. 4 (Terry Womack Deposition 93:7-12, April 25, 2011 (hereinafter "Womack Dep."))).)

The ALJ found the witnesses credible with the exception of Womack and his assistant. (Kidd Decl. Ex. 6 at 22.).  The ALJ based his assessment of Womack's credibility on the content of his testimony, his demeanor, and on a review of the circumstances in the 1992 revocation proceeding. (Kidd Decl. Ex. 6 at 20.)  The ALJ also found Womack's assistant not credible because her statements were impeached by all eleven complainants as well as by Summers. (Kidd Decl. Ex. 6 at 19-20.)  In addition, the ALJ found the assistant was "inappropriate in the lightness of her demeanor" during her testimony. (Kidd Decl. Ex. 6 at 19.)  The ALJ found Patient 1 credible in spite of the fact the patient had a known history of drug use and a DUI conviction. (Kidd Decl. Ex. 6 at 17-18.)  Additionally, there were some differences between Patient 1's testimony and certain written documents. (Kidd Decl. Ex. 6 at 17-18.)  After considering the evidence, the ALJ found Womack violated his duties as a chiropractor.  (Kidd Decl. Ex. 6 at 24-27.)  He therefore recommended Womack's license be suspended. (Kidd Decl. Ex. 6 at 28.)

On July 28, 2006, Womack filed Exceptions to the Proposed Order. (Kidd Decl. Ex. 7 at 1.) Nevertheless, with only a few minor changes, the Board accepted the ALJ's Proposed Order. (Kidd Decl. Ex. 7.)  The Board did amend portions of the ALJ's ruling to reflect that Womack had touched a patient's breast tissue with his fingers only. (Kidd Decl. Ex. 7 at 1.)  However, the Board also emphasized that "clinical justification is needed for the touching of a patient in the breast tissue or genitalia" and the Board found that Womack had no such justification.   (Kidd Decl. Ex. 7 at 3.) The Board's Final Order revoked Womack's license on August 10, 2006, and notified Womack he had the option of appealing the case to the Oregon Court of Appeals. (Kidd Decl. Ex. 7 at 3.) Womack attempted to file an appeal but was unable to find legal representation. (Womack Decl. ¶ 4.)

On August, 18, 2006, Lindley sent a letter to the Umatilla County District Attorney's Office. (Kidd Decl. Ex. 20.)  Attached to the letter was a copy of the Board's Final Order of Revocation revoking Womack's license.  (Kidd Decl. Ex. 20.)  Lindley's letter stated she had been in contact with the District Attorney's office about prosecuting the case prior to the Board hearing.  (Kidd Decl. Ex. 20.)  She indicated "[h]opefully the information in this order will assist you in reevaluating the prosecution in this matter."  (Kidd Decl. Ex. 20.)

Womack's criminal case was prosecuted by Assistant Attorney General Scott Jackson.  (O. Scott Jackson Decl. ¶ 2, Aug. 12, 2011.)  Jackson met with Lindley at least once.  (Burrows Decl. Ex. 9 (Scott Jackson Dep. 21:5-23, May 16, 2011 (hereinafter "Jackson Dep.")).)  Lindley shared her impressions of the case including her assessment of various witnesses' ability to testify. Jackson Dep. 21:24-22:20.)  Lindley disclosed material to Jackson that was not disclosed to Womack during the Board hearing.  (Lindley Dep. 101:9-16.)

Meanwhile, Womack began contacting state officials to inform them of the Board's actions. (Kidd Decl. Ex. 17-19.)  On August 30, 2006, Womack wrote letters to Oregon Governor Ted Kulongoski, Oregon State Representative Bob Jenson, and Oregon State Representative John Dallum. (Kidd Decl. Ex. 17-19.)  In his letters, Womack accused the Board of depriving him of his constitutional rights by conducting a biased investigation and hearing.  (Kidd Decl. 17-19.)

Following an independent review of the case, Jackson submitted criminal charges against Womack to the grand jury.  (Jackson Decl. ¶ 3.)  Womack was indicted on six counts of Sexual Abuse in the Third Degree and one count of Sexual Abuse in the Second Degree and formally charged with the offenses on August 16, 2007.  (Jackson Decl. at ¶ 4.)  The charges were based upon the complaints of four women, one of whom was not involved in the license revocation proceeding. (Jackson Decl. ¶ 4.)  After submitting criminal charges, but before trial, Jackson determined Patient 1 would make a poor witness because of her history of drug use and her criminal record that included a fraud charge.  (Kidd Decl. Ex. 5 (Jackson Dep. 31:8-34:25).)  He therefore decided not to use her as a witness.  (Jackson Dep. 34:22-3.)

Womack filed a motion to have the criminal case dismissed based on vindictive prosecution. (Kidd Decl. Ex. 22.)  The motion states Womack had demanded an administrative hearing, lobbied the Oregon legislature for a bill limiting the power of the Board to seek out complaints, and asked for a complete accounting of the legal and investigatory fees he was required to pay.  (Kidd Decl. Ex. 22 at 3-4.)  Womack argued these actions irked the members of the Board and, as a result, they sought to have him prosecuted.  (Kidd Decl. 22 at 4.)  The court disagreed.  It found there was no evidence to support a vindictive prosecution claim and denied Womack's motion.  (Kidd Decl. Ex. 24.)  Ultimately, the Judge issued a directed verdict dismissing the charge of Sexual Abuse in the Second Degree, and a jury found Womack not guilty of the remaining charges.  .  (Womack Decl. Ex. 9.)  The case was dismissed on June 2, 2008.  (Womack Decl. Ex. 9.)

Following the dismissal of his criminal case, Womack contacted the Board and requested reinstatement of his license.  (Womack Decl. ¶ 6.)  Womack received a letter in reply stating he would be required to retake the Oregon Chiropractic State Board Examination.  (Womack Decl. ¶ 6.)  However, believing his application would not be fairly assessed, Womack did not reapply for a license.  (Womack Decl. ¶ 6.)  In 2009, Womack again wrote the Board requesting a reinstatement hearing.  (Womack Decl. ¶ 6.)  He did not receive a response to his second letter.  (Womack Decl. ¶ 6.)  Womack filed this action on February 21, 2010.

*LEGAL STANDARD*

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED R. CIV. P. 56(a).  The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All material facts are resolved in a light most favorable to the nonmoving party.  *Id*. at 331.  The court must accept all evidence and make all inferences in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

*DISCUSSION*

Page 8 - FINDINGS AND RECOMMENDATION

Womack alleges defendants violated his procedural due process rights guaranteed by the Fourteenth Amendment to the United States Constitution by depriving him of a property interest in his chiropractic license. (Compl. ¶ 39.) Womack also alleges defendants subjected him to ridicule and caused him to lose standing in his community thereby violating his substantive due process rights guaranteed by the Fourteenth Amendment. (Compl. ¶ 47.) Finally, Womack alleges defendants violated his Fourth and Fourteenth Amendments rights by causing criminal proceedings to be instigated against him without probable cause. (Compl. ¶ 51.)

Defendants move for summary judgement on all claims. Specifically, defendants contend Womack's due process claims should be dismissed for the following reasons: 1) those claims are barred by a two-year statute of limitations; 2) defendants are entitled to absolute and qualified immunity; 3) Womack received a fair hearing and opportunity for judicial review; 4) the doctrine of issue preclusion bars Womack from seeking reinstatement of his license; and 5) Womack's has no constitutionally protected interest in his reputation alone. (Defs.' Mem. Summ. J. 8.) In addition, with respect to Womack's malicious prosecution claims, defendants argue they did not initiate criminal proceedings and those claims are barred by issue preclusion. Alternatively, defendants contend there was sufficient probable cause to prosecute Womack. (Defs.' Mem. Summ. J 8.)

I.  Due Process Claims

Section 1983 creates a private right of action against government officials who, under color of law, violate a person's federal rights. The right to sue under 42 U.S.C. § 1983, however, is circumscribed by applicable statute of limitations and doctrines of government immunity.

A.    Pre-2008 Allegations

1. Statute of Limitations

Defendants contend Womack's due process claims are barred by a two-year statute of limitations. The statute of limitations for a 42 U.S.C. § 1983 claim is borrowed from state personal injury tort law. *See Wilson v. Garcia*, 471 U.S. 261, 269 (1985), *superseded by statute on other grounds*, 28 U.S.C. § 1658, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369,

377-80 (2004); *Drollinger v. Gerber*, No. CV-09-134-AC, 2011 WL 7154483 (D. Or. Sept. 12, 2011 *adopted* Feb. 6, 2012). Federal courts will also borrow the forum state's laws regarding tolling. *Wilson* 471 U.S. at 267. A statute of limitations date of accrual, however, is governed by federal law. *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). In Oregon, the statute of limitations for personal injury torts is two years. OR. REV. STAT. § 12.110(1). The Ninth Circuit has held that a claim brought under § 1983 accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Bagley v. CMC Real Estate Corp.,* 923 F.2d 758, 760 (9th Cir. 1991), *cert denied* 502 U.S. 1091(1992); *Drollinger* 2011 WL 7154483 at *3. , This rule requires knowledge of an actual injury, as opposed to knowledge of a legally recognized injury. *Lukovsky*, 535 F.3d at 1048-9. The court in *Lukovsky* reasoned that a claim accrues and the statute of limitations began to run as soon as plaintiff learns of their actual injury. *Id*. at 1051. In *Lukovsky*, plaintiffs suffered an actual injury when the decision was made not to hire them. *Id*. The court held the statute of limitations accrued as soon as plaintiffs learned of the injury even if they did not yet know of a possible discriminatory motive. *Id*.

There are several circumstances which may toll the accrual of a statute of limitations. A statute of limitations may be tolled if an injured party is required to exhaust available administrative remedies before filing a civil suit. *Brown v. Valoff*, 422 F3d 926 (9th Cir. 2005). Administrative exhaustion requirements may be an explicit part of a statutory scheme or may be judicially developed. *See Montgomery v. Rumsfeld*, 572 F.2d 250, 254 n.4 (9th Cir. 1978). Judicially developed exhaustion requirements are susceptible to "judicial refinement and modification." *Id*. at 253.

A court may also toll a statute of limitations under the doctrines of equitable tolling or equitable estoppel. *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). Equitable tolling can be applied when there is excusable delay by plaintiff. For example, "[i]f a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can

gather what information he needs." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." *Id*. at 1176.  Thus, the doctrine of equitable estoppel arises when active conduct by a defendant prevents plaintiff from bringing a timely claim. *Johnson*, 314 F.3d at 414.

Defendants assert Womack's due process claims brought under § 1983 should be dismissed because the two-year statute of limitations has run. (Defs.' Mem. Summ. J. 8.)  Womack's alleged injury, the revocation of his license, occurred in 2006, more than two years before Womack initiated this lawsuit.  (Defs.' Mem. Summ. J. 11.)  In response, Womack argues his claim is not barred because the "interests of justice" require tolling of the limitations period while he was pursuing administrative remedies.  (Pl.'s Resp. 20.)  Womack relies on OR. REV. STAT. § 684.100(2) to support his argument based on administrative tolling.  That statute provides:

> The [B]oard may, at any time two years or more after the refusal, revocation or cancellation of registration under this section, by a majority vote, issue a license restoring to or conferring on the person all the rights and privileges of the practice of chiropractic as defined and regulated by this chapter.

While his license may be restored only after the statutory two year waiting period, Womack admits OR. REV. STAT. § 684.100 does not require a chiropractor to reapply to the Board for a license before filing a civil suit.  (Pl.'s Resp. 21.)  There is nothing in the language of the statute which provides for tolling of any applicable statutes of limitations.  Womack does not cite, nor has this court discovered, any Oregon state court decision to justify a finding that OR. REV. STAT. § 684.100 provides the exclusive administrative remedy for a chiropractor who has had his licence revoked. Womack nevertheless argues the interests of justice require this court to create an exhaustion requirement based upon the above statute.

The declines to do so for several reasons.  Generally, there is no requirement to exhaust state administrative remedies before bringing a § 1983 claim.  *Heck v. Humphrey*, 512 U.S. 477, 480 (1994).[2]  As mentioned above, the law regarding tolling of a § 1983 action is borrowed from the

_____

[2]There is an exception to this general rule "[w]here Congress specifically mandates [that] exhaustion is required."  *Booth v. Churner*, 532 U.S. 731, 732 (2001).  For example, 42 U.S.C. §

laws of the forum state. Oregon case law suggests Oregon courts disapprove of applying judicially-made exhaustion requirements to statutes that provide for elective administrative remedies. *See, e.g., Esperum v. Oregon Bd. of Parole*, 296 Or. 789, 795 n 2, 681 P.2d 1128 (1984) (prisoner not required to exhaust this elective administrative remedy to obtain judicial review). The rule in OR. REV. STAT. § 684.100 is purely elective. Former licensees are not required to ask the Board to reinstate their licenses, and the Board does not have to grant such requests. Thus, the court declines to create an exhaustion requirement grounded in OR. REV. STAT. § 684.100.

Womack also contends the statute of limitations regarding revocation of his license should only begin to run when he chooses to invoke his right to ask for a license reinstatement pursuant to OR. REV. STAT. § 684.100. However, after the two-year waiting period, this statute provides no requirement or restrictions on when a former licensee must request a reinstatement. Womack alleges that he requested reinstatement of his license in 2008. However, Womack could have waited any number of years before making such a request. Accepting Womack's argument would allow Womack to indefinitely delay accrual of his claims based upon revocation of his license. Such a result would render a statute of limitations meaningless. *See Pearsall v. Bank of America Corp.*, 2012 WL 1856511 (E.D.Cal. May 21, 2012).

Similarly, the doctrine of equitable tolling does not apply. This court was unable to locate any Oregon court decisions that discuss the doctrine of equitable tolling. In fact, other courts in this District have noted the absence of Oregon law on equitable tolling. *See, e.g., D.H.M v. Or. Youth Auth.*, No. CV-06-143-KI, 2008 WL 1766727, at *4-5 (D. Or. April 8, 2008); *see also Jones v. Santos*, No. CV-04-0009-PK, 2008 WL 4738097, at *3 (D. Or. Oct. 24, 2010). As explained above, federal courts borrow state tolling law for § 1983 claims, which in the case of equitable tolling does not appear to exist in Oregon. Additionally, the record indicates Womack believed the Board's

---

1997e(a) provides: "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Such an exception, however, does not apply here.

actions were unconstitutional as early as August 30, 2006.  On that date Womack wrote letters to various public officials claiming the Board had conducted a biased investigation depriving him of his constitutional rights.  Womack clearly knew he had a colorable constitutional claim within the two year limitations period.

Nor does equitable estoppel apply to defendants' statute of limitations defense.  Under Oregon law, in order for the doctrine of equitable estoppel to apply:

> (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Guardian Management*, *LLC ex rel. Villa v. Zamiello*, 194 Or. App. 524, 530, 95 P.3d 1139 (2004) (quoting *Bennett v. City of Salem et al.*, 192 Or. 531, 541, 235 P.2d 772 (1951)).  There is no evidence in the record to indicate defendants did anything to prevent Womack from seeking reinstatement of his license or filing a lawsuit.  The Board's final decision specifically notified Womack he had the right to seek judicial review of the Board's ruling.  In fact, Womack's declaration states he attempted to challenge the Board's decision but was unable to find an attorney to represent him.  Moreover, there is no evidence defendants attempted to dissuade Womack from following the necessary procedures to regain his licence.  The doctrine of equitable estoppel does not apply.

In sum, the court finds that the two-year statute of limitations for filing § 1983 claims based upon the revocation of Womack's chiropractic license accrued when Womack learned his license had been terminated and he failed to file a timely appeal. The statute of limitations was not tolled by any of the circumstances advanced by Womack.  Womack's license was revoked on August 10, 2006, his appeal rights ran 60 days later.  Womack filed this action on February 21, 2010, more than two years after Womack lost his license.

### 2.  Absolute and Qualified Immunity

Next, defendants raise the defenses of absolute and qualified immunity for their actions. Womack argues certain actions taken by the Board, *i.e.*, promoting the use of false information,

refusing to provide Womack with a name-clearing hearing and issuing press releases containing false information, were outside the protection of absolute immunity.  (Pl.'s Resp. 25.)  Similarly, Womack argues defendants are not entitled to immunity for actions taken outside the scope of quasi-judicial and quasi-prosecutorial act.

Womack also argues that Summers and Lindley were not entitled to qualified immunity for their actions during the investigation of the case and presentation of the case to the Board. (Pl.'s Resp. 30-32.)  Womack argues defendant Summers is not entitled to qualified immunity because case law has established that filing a false report that becomes the basis for a constitutional deprivation may support a § 1983 claim.  (Pl.'s Resp. 31.)  Womack argues defendant Lindley is not entitled to qualified immunity because she violated the Oregon statute that governs disclosures during health professional regulatory board disciplinary processes.  (Pl.'s Resp. 32.)

All of the above allegations of  unconstitutional actions occurred outside the applicable statue of limitations period.  Therefore, the court need not decide whether defendants were protected by absolute or qualified immunity when engaging in these particular actions.  Womack's due process claims relating to the revocation of his license are barred by the two year statute of limitations.  Accordingly, summary judgement should be granted with respect to these claims.

### B.    Post-2008 Allegations

#### 1. Statute of Limitations

While the principal focus of Womack's due process claims involve allegations regarding defendants' actions prior to and during the Board hearing that resulted in the revocation of Womack's chiropractic license, Womack also alleges defendants violated his Fourteenth Amendment Rights when they "refused to provide [p]laintiff with a name clearing hearing or process and further refuse[d] to allow [p]laintiff to apply for or receive his license . . . ."  (Compl. ¶ 41(6).)  Sometime after June 2, 2008, by letter to the Board, Womack asked to have his license reinstated.  The Board responded by letter stating Womack was required to take the chiropractor's exam.

(Womack Decl. ¶ 6.)  Womack wrote to the Board again in 2009, seeking a reinstatement hearing.[3] Womack alleges he received no response to his 2009 request. *Id.*  These two requests for license reinstatement occurred within the applicable two-year statute of limitations period.

While Womack's allegations regarding his attempts to regain his license do not operate to toll the statute of limitations as explained above, Womack's constitutional claims arising out of these two requests for license reinstatement survive a statute of limitations defense.

2.  Absolute and Qualified Immunity

Defendants contend they are entitled to absolute immunity regarding Womack's request for reinstatement.  According to defendants, Womack's request for a reinstatement hearing involves a quasi-judicial function and, as such, they are immune from suit for allegedly failing to set such a hearing.  Defendants also argue that qualified immunity protects them from Womack's claims for denial of due process for failing to reinstate his license.  Because it is clear defendants are entitled to qualified immunity for events that occurred after 2008 regarding Womack's requests for reinstatement, it is unnecessary for the court to reach the issue of whether defendants are cloaked with absolute immunity regarding their response, or lack thereof, to Womack's letters.

Qualified immunity protects public officials from civil suits as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Messerschmidt v. Millender,* –U.S.– (February 22,2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The United States Supreme Court has mandated a two-step test for qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part on other grounds by Pearson v. Callahan,* 555 U.S. 223, 236-37 (2009).  First, a court must determine whether a defendant violated a federal right.  Second, a  plaintiff must show that right was "clearly established" at the time of the alleged unlawful conduct  *Id.*  Courts may determine which part of

---

[3] Womack submitted a declaration in support of these allegations.  (Womack Decl. ¶ 6.) McTeague stated in his declaration:  "The Board informed Dr. Womack that he needs to make a formal application if he wants to begin this process [of reinstatement] . . . ."  (McTeague Supplemental Decl. ¶ 3, Nov. 4, 2011.)  However, no letters either to or from the Board appear in the record.

the analysis to address first.  *See Pearson,* 555 U.S. at 236 ("while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").  In this case, the Court will determine first whether there was a clearly established due process right in 2008 for Womack to have his license reinstated without following the applicable statutory procedures.  Womack has the initial burden of showing the right is clearly established.  *Sewaney v. Ada County*, 119 F.3d 1385, 1388 (9th Cir. 1999).  Defendants must have had "fair warning" that certain conduct is unlawful.  *Flores v. Morgan Hill Unified Sch. Dis.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003).  The Ninth Circuit requires that "'[due] process violations...be particularized before they can be subjected to the clearly established test.'" *Newell v. Sauser*, 79 F.3d 115,117 (9th Cir. 1996) (quoting *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir.1995)).

In order to satisfy his burden here, Womack must show that his right to have his license reinstated, without invoking the statutory process established for such purpose, is a clearly established right under a due process analysis.  Womack's only  evidence that defendants violated his constitutional due process rights is his statement regarding the Board's response, or lack thereof, to his 2008 letter seeking reinstatement and his 2009 request for a license reinstatement hearing. There is no evidence the Board, in fact, refused reinstatement or a hearing.  Rather, Womack admits the Board directed him to take the chiropractor's exam, which is part of the process of reinstatement. OR. REV. STAT. §§ 684.050; 684.100 (2).  It is undisputed Womack filed no application to have his license reinstated in accordance with OR. REV. STAT. § 684.100.  The State of Oregon has given the Board authority to determine the procedures for applying for a license.  OR. REV. STAT. § 684.040. Womack admits he declined to follow these applications procedures.[4]  (Womack Decl. ¶ 4.)  At most, the record demonstrates Womack wrote letters to the Board.  Womack failed to follow the statutory procedure, and there was nothing for the Board to decide regarding reinstatement of Womack's license.  No reasonable official in defendants' position  would have understood that what

_____

[4] Womack alleges that such an application would have been futile.  However, that does not excuse him from availing himself of a process required for all chiropractors to gain a license in Oregon.

they were doing violated Womack's due process rights. No "clearly established" due process right was violated by defendants either by failing to reinstate Womack's license based on his letter request or by failing to respond to his letter request for a hearing. *See Mason v. Arizona*, 260 F.Supp.2d 807, 824 (D. Ariz. 2003)(state chiropractic board entitled to qualified immunity). Accordingly, defendants are entitled to qualified immunity for their actions as a result of Womack's written requests for license reinstatement and a hearing.

II.     Womack's Request for Reinstatement and Name-Clearing Hearing

        Womack contends he is entitled to reinstatement of his chiropractic license and a name-clearing hearing, and he seeks such affirmative relief from this court. Defendants argue Womack is not entitled to reinstatement and a name-clearing hearing based on issue preclusion, *i.e.*, that Womack is precluded from relitigating revocation of his license and, additionally, he has already received an adequate name-clearing hearing.

        Here Womack has not sued the defendants in their official capacity for reinstatement of his license. *See Mason*, 260 F.Supp. 2d at 824. However, even if he had attempted such a claim under § 1983, it would be precluded by the agency proceedings which resulted in the revocation of his license. When a state agency, here the Board, acts in a judicial capacity to resolve disputed issues of fact and law properly before it, and when parties possessed an adequate opportunity to litigate those issues, federal courts must give the state agency's fact-finding and legal determinations the same preclusive effect as entitled in that state's courts. *University of Tennessee v. Elliott*, 478 U.S. 788, 798-99 (1986)*; United States v. Utah Construction Mining Co.,* 384 U.S. 394 (1966); *Skysign Int'l, Inc. v. City and County of Hololulu*, 276 F.3d 1109, 1115 (9th Cir.2002); *Jackson v. City of Portland,* No. CV-08-252-HA, 2009 WL 250035 (D.Or. Feb. 3, 2009). Womack fully litigated revocation of his license in a contested case, including prior notice, right to counsel, discovery, witness cross-examination and a hearing before an ALJ. OR. REV. STAT. 183.417. He failed to

appeal the final determination of the Board. OR. REV. STAT. 183.480.  *See Olson v. Morris*, 188 F.3d 1083, 1086 (9th cir. 1999).

The Court must give the Board's factfinding the same preclusive effect to which it would be entitled in Oregon courts. *University of Tennessee*, 478 U.S. at 799.  Oregon courts apply both issue preclusion and claim preclusion to administrative proceedings.  *See Jackson v. City of Portland*, 2009 WL 250035 at *3.  Under Oregon law, a party is precluded from relitigating the same claim against the same defendant if the second action is based on the same factual transaction at issue in the first action, seeks an additional remedy to the one requested earlier, and the claim could have been joined in the first action. *Drews v. IBI Cos.*,  310 Or. 134, 795 P. 2d 531 (1990).   Here Womack seeks reinstatement of his revoked license and a name-clearing hearing through this § 1983 action.  His license revocation was fully litigated in the prior proceedings and he was afforded a hearing and opportunity to appeal revocation.   His constitutional claims could have been raised in the administrative proceedings.  Womack  is therefore barred from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction that could have been-but was not-raised in the prior state court proceedings..  *Migra v. Warren City Sch.Bd. Of Educ*. 465 U.S. 75 (1984); *Scoggin v. Schrunk*, 522 F.2d 436 (9th Cir. 1975); *Drews*, 310 Or. at 140.

Defendants' motion for summary judgment against all of Womack's due process claims should be granted.


III.    <u>Malicious  Prosecution</u>

Womack brings a claim for malicious prosecution against defendants on the grounds defendants denied his constitutional rights under the Fourth and Fourteenth Amendments. (Compl. ¶39.)  In the Ninth Circuit, a claim for malicious prosecution based upon an underlying criminal prosecution is not generally available under §1983 if there is an adequate remedy within the state system.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987).   However, an exception exists when the alleged malicious prosecution is conducted for the purpose of denying

plaintiff a specific constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Because Womack alleges defendants acted with the intent to deny him his constitutionally protected rights, Womack has a cognizable claim for malicious prosecution under §1983. "Malicious prosecution [under § 1983] actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy*, 368 F.3d at 1066; *accord Westwood v. City of Hermiston*, 787 F. Supp.2d 1174, 1206 (D. Or. April 15, 2011).

To prevail on a §1983 claim for malicious prosecution, a plaintiff must prove he was prosecuted with malice and without probable cause, and establish the prosecution was conducted for the purpose of denying plaintiff a specific constitutional right. *Awabdy*, 368 F.3d at 1066. Also, under Oregon law, malicious prosecution requires: (1) the initiation or continuation of criminal proceedings; (2) by or at the insistence of defendants; (3) terminating in plaintiff's favor; (4) instituted with malice; (5) without probable cause; and (6) damages. *Blandino v. Fischel*, 179 Or. App. 185, 189, 39 P.3d 258 (2002).

Defendants contend summary judgment as to Womack's malicious prosecution claims should be granted based on three alternative theories. First, defendants argue the prosecutor independently made the decision to charge Womack, thus shielding defendants from liability. (Defs.' Mem. Summ. J. 22.) Next, defendants contend there was probable cause to initiate criminal proceedings against Womack. (Defs.' Mem. Summ. J. 22.) Finally, defendants urge this court to grant summary judgment on this claim because it is barred by issue preclusion.

A.    *Independent Prosecutor Decision*

Defendants assert Assistant Attorney General Jackson exercised independent prosecutorial discretion in deciding to pursue criminal charges against Womack, therefore, precluding defendants' liability. A plaintiff may rightly bring a suit for malicious prosecution against the person who wrongfully caused the charges to be filed. *Awabdy*, 368 F.3d at 1067. However, the court presumes the decision to file a criminal complaint is the result of an independent determination by the

prosecutor, thus precluding liability of those who participated in the investigation or filed a report that resulted in the initiation of criminal proceedings against the malicious prosecution plaintiff. *Id*. A plaintiff may rebut this presumption by showing defendants improperly exerted pressure upon the prosecutor, knowingly provided him with misinformation, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of criminal proceedings. *Id*. The burden is on plaintiff to prove facts sufficient to overcome the presumption of prosecutorial independence. *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986).

In this case, resolving all doubts against defendants and drawing all inferences in favor of Womack, there is insufficient evidence for Womack to overcome the presumption of prosecutorial independence. The record shows Jackson did not rely solely upon the information provided by defendants and, instead, conducted an independent investigation of the complaints against Womack.[5] Jackson reviewed the file provided him by defendant Lindley, conducted his investigation and submitted criminal charges against Womack to the Grand Jury. (Jackson Decl. ¶ 3.) Jackson spoke with each victim and, after hearing their individual stories, determined whether to use them in the state's case against Womack. (Jackson Dep. 30:2-51:7-9; 51:11-20.) Jackson charged Womack with six counts of Sexual Abuse in the Third Degree and one count of Sexual Abuse in the Second Degree. (Jackson Decl. ¶ 4.) The charges were based upon complaints of four women, only three of whom participated in the license revocation proceeding against Womack. (Kidd Decl. Ex. 21; Jackson Decl. ¶ 4.) Based upon her criminal background, Jackson determined not to use one of the victims as a witness. (Jackson Dep. 32:6-14, 34:20-25.) Womack was indicted by the Grand Jury as charged.

Nor does the record reveal any facts to support an inference defendants exerted pressure on Jackson to prosecute Womack, knowingly provided Jackson with misinformation, or concealed

---

[5] The Board has a statutory obligation to report prohibited and unprofessional conduct to the appropriate law enforcement agency. *See* OR. REV. STAT. § 676.150(4).

exculpatory evidence. While Womack claims defendants knowingly provided Jackson with misinformation, he does not point to any faulty evidence. (Pl.'s Resp. 41.) Womack also contends defendants withheld exculpatory information from the prosecutor with the intent to compel Jackson to prosecute Womack but, similarly, he does not state what evidence defendants withheld or how that evidence would exculpate Womack. (Pl.'s Resp. 42.) Rather, the record shows only that defendant Lindley forwarded the Board's information regarding the allegations against Womack to the District Attorney's office, withholding only those materials that were confidential by law. ( Lindley Dep. 133:12-24.)

Womack's conclusory allegations of defendants' bad faith conduct are insufficient to survive summary judgment. In addition, the record is devoid of evidence defendants acted with malice. It merely supports defendants' contention they acted within the scope of their statutory responsibilities to report incidents to the District Attorney. This court should grant defendants' motion on Womack's claim of malicious prosecution under § 1983 because Womack has failed to overcome the presumption of prosecutorial independence.

B.    *Probable Cause to Initiate Proceedings*

Even if Womack could overcome the presumption of prosecutorial independence, the court should nevertheless grant defendants' motion for summary judgment because there was probable cause to initiate criminal proceedings and to prosecute. Proof of probable cause is a complete defense to a claim for malicious prosecution. *Gustafson v. Payless Drug Stores Northwest , Inc.*, 269 Or. 354, 525 P.2d 118 (1974). In Oregon, a person has probable cause to initiate criminal proceedings if he or she reasonably believes that the person accused has acted in a particular manner, and such acts constitute the offense charged. *Id*. at 356-57. Probable cause in a malicious prosecution claim refers to the subjectively and objectively reasonable belief defendant committed the crime in question. *Blandino*, 179 Or. App. at 191. Thus, for Womack to prevail on his malicious prosecution claim, he must establish defendants lacked both the subjectively and objectively

reasonable belief Womack sexually abused his patients, conduct for which he could be criminally prosecuted.

Defendants had ample probable cause at the conclusion of the administrative hearing to convey information to the Umatilla County District Attorney. The following facts are undisputed:

1.    Eleven women testified at the administrative hearing that Womack touched them in inappropriate places on their bodies in a manner that could reasonably be interpreted as sexual. (Kidd Decl Ex. 6 at 12);

2.    The ALJ found all eleven victim's testimony to be credible. (Kidd Decl. Ex. 6 at 22);

3.    The ALJ found Womack's testimony was not credible. (Kidd Decl. Ex. 6 at 20-22);

4.    The ALJ found Womack sexually abused ten of those victims. (Kidd Decl. Ex. 6 at 28);

5.    The ALJ recommended Womack's license to practice chiropractic should be revoked. (Kidd Decl. Ex. 6 at 24-27);

6.    The Board issued an order revoking Womack's license to practice chiropractic. (Kidd Decl. Ex. 7);

7.    After presentation of the evidence, the Grand Jury voted to indict Womack on six counts of Sexual Abuse in the Third Degree and one count of Sexual Abuse in the Second Degree. (Kidd Decl. Ex. 21).

These undisputed facts provide a basis for the subjective belief on defendants' part that Womack sexually abused his patients. Furthermore, the facts abundantly support an objectively reasonable belief that Womack engaged in criminal conduct against his patients for which he could be held criminally liable.

Womack argues that probable cause can be negated by a showing defendants acted maliciously in pursuing charges against Womack. However, because the court concludes there was both a subjective and objective basis for defendants to believe Womack had violated criminal

statutes regarding sexual assault, the court need not address whether Womack established malice. *Westwood,* 787 F. Supp. 2d at 1195.  Womack's claim for malicious prosecution fails because defendants had probable cause to report information to the District Attorney and there was probable cause to prosecute Womack.

      *C.*     *Issue Preclusion*

Because Womack has failed to overcome the presumption of prosecutorial independence, and there was probable cause to initiate criminal proceedings and prosecute Womack, it is not necessary for the court to decide the merits of defendants' issue preclusion defense.  Defendants' motion for summary judgment against Womack's malicious prosecution claim should be granted.

*RECOMMENDATION*

Based upon the foregoing, Defendants' Motion for Summary Judgment (doc. #8) should be GRANTED and this case should be DISMISSED.

*SCHEDULING ORDER*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **June 28, 2012**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 11th day of June, 2012.

                 /s/ Patricia Sullivan_____
                Patricia Sullivan
                United States Magistrate Judge